UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JASON B. RISCH,

     Plaintiff,

v.                                        Case No. 3:23cv8077-MCR-HTC

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

This case is before the Court for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Jason B. Risch's application for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). After reviewing the record, Doc. 9, the parties' submissions, Docs. 11, 16, & 17, and the relevant law, the undersigned finds the Commissioner's decision should be AFFIRMED, as: (1) the administrative law judge's ("ALJ") hypothetical to the vocational expert ("VE") was consistent with the ALJ's residual functional capacity ("RFC") finding; (2) the RFC did not contain impermissibly vague and

---

[1] Martin O'Malley replaced Kilolo Kijakazi as the Commissioner of Social Security and is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

ambiguous terminology; (3) the ALJ's failure to include a public interaction limitation in the RFC was a harmless error; and (4) the ALJ adequately considered the effects of Risch's anxiety.

## I.     Background

### A.     Procedural History

Risch, a Navy veteran and former truck driver, applied for DIB when he was 43 years old, alleging he became disabled on November 25, 2020, due to major depressive disorder/PTSD, radiculopathy lower left extremity, L4 intra-articularis pars defect, whiplash condition/straightening of the cervical lordosis, and sleep apnea. T. 223, 248, 252.[2]  The Commissioner denied the application initially and on reconsideration. T. 81, 90.  After holding a hearing on June 9, 2022, ALJ William Zuber found Risch was not disabled under the Act. T. 21-31.  The Appeals Council subsequently denied Risch's request for further review, making the ALJ's decision the final decision of the Commissioner. T. 1-4.

On April 13, 2023, Risch filed a complaint with this Court seeking review of the Commissioner's decision.  Doc. 1.  He argues: (1) substantial evidence does not support the conclusion he can work as a final assembler because the RFC finding in the ALJ's decision is inconsistent with the hypothetical RFC posed to the VE; (2) the ALJ's RFC finding impermissibly contains vague and ambiguous terminology

---

[2] References to the record will be by "T.," for transcript, followed by the page number.

that is not expressed in terms of work-related functions; (3) the ALJ erred by failing to identify Risch's capacity to interact with the public, despite noting he had "marked" limitations interacting with others; and (4) the ALJ erred by failing to find Risch's anxiety was a severe impairment and met Listing 12.06.  Doc. 11.

### B.    The ALJ's Findings

The Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To be considered disabled, an individual's impairments must be so severe he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

To assess whether a claimant is disabled, an ALJ uses a five-step, sequential evaluation process to determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the impairment, or combination of impairments, meets or equals the severity of the specified impairments in the Listing of Impairments; (4) if not, whether the claimant can perform any of his past relevant work in light of his RFC; and (5) if not, whether there are significant

numbers of jobs in the national economy the claimant can perform given the claimant's RFC, age, education, and work experience. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, the ALJ determined at step one that Risch had not engaged in substantial gainful activity since November 25, 2020, the alleged onset date.  T. 23.  At step two, he found Risch had the following severe impairments: degenerative disc disease; obesity; PTSD; and depression.  T. 23.  He determined at step three that Risch did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. 23.

At step four, the ALJ concluded Risch was unable to perform any past relevant work but had the RFC to perform:

> sedentary work as defined in 20 C.F.R. § 404.1567(a) except he can lift or carry up to 20 pounds occasionally and 10 pounds frequently.  He can sit for six hours total in a day but for only 30 minutes at one time.  He can stand/walk for six hours total in a day but for only 30 minutes at a time and he requires a cane for ambulation.  He can occasionally stoop, crouch, crawl, kneel, balance, and climb ramps or stairs, but he may never climb ladders, ropes, or scaffolds.  He can frequently use the upper extremities for pushing, pulling, fingering, and handling.  He can tolerate occasional exposure to vibrations, dangerous machinery, and unprotected heights.  He is limited to simple, routine, non-fast paced/quota driven tasks, requiring little independent judgment.  He can tolerate occasional superficial interaction with coworkers and supervisors, preferably in semi-isolation.  He can tolerate only occasional changes in the work routine/environment.  He can sustain concentration, persistence, and pace in 2-hour segments.

T. 24-25.  Based on this RFC, and relying on the testimony of a VE, the ALJ found at step five Risch could perform work as a "final assembler."  T. 30-31.  Thus, the ALJ concluded Risch had not been disabled from November 25, 2020, the alleged onset date, through August 5, 2022, the date of the ALJ's decision.  T. 31.

## II.    Standard of Review

"[R]eview of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824 (11th Cir. 2010) (citation omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).   Under this limited standard of review, the Court may not make fact findings, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Heatly*, 382 F. App'x at 824 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

## III.   Discussion

### A.    The ALJ adopted an RFC that was consistent with the hypothetical posed to the VE at the hearing.

Risch first argues the ALJ erred by posing a hypothetical RFC to the VE that was less restrictive than the RFC that was ultimately adopted.  Doc. 11 at 6-8.  At the hearing, the ALJ asked the VE whether a person limited to, among other things, "no more than occasional superficial interaction with coworkers and supervisors,

*preferably [in] small groups or something in isolation*" could work; the VE responded such a person could work as a final assembler.  T. 69-70.  In his decision, the ALJ used slightly different wording for the RFC, finding Risch could "tolerate occasional superficial interaction with coworkers and supervisors, *preferably in semi-isolation*."  T. 25.

Risch suggests work performed in "semi-isolation" is more restrictive than work performed in "small groups."  He argues the ALJ's finding that he could work as a final assembler is not supported by substantial evidence because "there is no way to reliably ascertain whether the VE's response to the ALJ's hypothetical RFC would be the same if the job had to be performed in 'semi-isolation,' as opposed to in a 'small group' or in complete 'isolation.'"[3]  Doc. 11 at 8.

The undersigned concludes the hypothetical posed to the VE sufficiently conveyed the limitations found in the ALJ-formulated RFC, despite the slightly different wording used, because the ALJ's decision shows he considered the term "semi-isolation" to be synonymous with work in "small groups."  When the ALJ discussed Dr. Tim Knight's opinion, he agreed with Dr. Knight that Risch had "marked" limitations in social interactions and accounted for that in the RFC "with

---

[3] Despite this reference to "complete isolation" in the memorandum, Risch's argument is premised on "semi-isolation" being more restrictive than "small groups."  In other words, Risch disregards the ALJ's reference to "something in isolation" in the hypothetical, arguing "it is implausible that any job at all could be performed in complete isolation," Doc. 11 at 7, and presumes the VE must have also disregarded that reference, focusing, instead, only on whether the job could be performed in "small groups."  *Id.*

a limitation to semi-isolation work in small groups with only superficial and occasional contact." T. 30. In other words, the ALJ indicated a person working in "semi-isolation" could "work in small groups with only superficial and occasional contact." Thus, the limitation in the hypothetical posed to the VE—"occasional superficial interaction with coworkers and supervisors, preferably [in] small groups or something in isolation"—is consistent with the limitation in the RFC—"occasional superficial interaction with coworkers and supervisors, preferably in semi-isolation." Because the hypothetical included all the social interaction limitations found in the RFC, the VE's testimony provides substantial evidence for the ALJ's finding that Risch could work as a final assembler. *See Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009) (when the ALJ's hypothetical to the VE includes all of a claimant's credible limitations, the VE's testimony that a person with those limitations could perform a significant number of jobs in the national economy constitutes substantial evidence the claimant is not disabled).

Furthermore, the Dictionary of Occupational Titles ("DOT") is consistent with the VE's testimony and supports the ALJ's finding that Risch could work as a final assembler. *See* DOT, No. 713.687-018 ("Final Assembler"), 1991 WL 679271. The DOT code for the final assembler job contains "a fifth digit, or 'People' rating, of "8," 'reflecting the lowest possible level of human interaction that exists in the labor force.'" *Allen v. Kijakazi*, 2023 WL 2329794, at *11 n.11 (M.D.N.C. Mar. 2,

2023), *report and recommendation adopted*, 2023 WL 2655186 (M.D.N.C. Mar. 27, 2023) (citation omitted).    Indeed, a social interaction rating of 8 only requires "[a]ttending to the work assignment instructions or orders of [a] supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed."    DOT, Appendix B, 1991 WL 688701; *see also Bingham v. Comm'r of Soc. Sec.*, 2022 WL 19239, at *4 (S.D. Ohio Jan. 3, 2022) (noting jobs with ratings of 8 "have the least possible amount of interactions with other people, with no express coworker interaction and no other interpersonal interaction except for minimal interaction required with supervisors").[4]    And courts have concluded jobs with these

---

[4] Risch challenges the Commissioner's reliance on *Bingham* and asserts that decision demonstrates an inconsistency between the ALJ's RFC finding and the determination that he had marked limitations in interacting with others. Doc. 17 at 4-5. In *Bingham*, the court stated "[a] complete inability to respond to supervisors or to accept critical feedback in all situations suggests a level of 'marked' or 'extreme' limitation in the ability to adapt and in interacting with others." 2022 WL 19239 at *4. Because the ALJ in Risch's case found he had marked limitations interacting with others, Risch claims that, pursuant to *Bingham*, the ALJ should have found he had a complete inability to respond to supervisors or to accept critical feedback in all situations, instead of finding he could tolerate occasional superficial interaction with coworkers and supervisors. This argument is unpersuasive for several reasons. First, the *Bingham* court's statement did not specify which level of limitation, "marked" or "extreme," corresponded to a complete inability to respond to supervisors or accept critical feedback, and both the ALJ's decision here and caselaw indicate it would be "extreme." *See* T. 24 (defining an "extreme limitation" as "the inability to function independently, appropriately, or effectively" and a "marked limitation" as "a seriously limited ability to function independently, appropriately, or effectively"); *Ladely v. Comm'r, Soc. Sec. Admin.*, 2018 WL 2336755, at *4 (D. Or. May 23, 2018) (concluding that finding of marked limitations in social functioning did not preclude "occasional superficial contact with coworkers and supervisors" and noting "[w]hile an 'extreme' limitation might rule out even 'occasional superficial contact' with others, a 'marked' limitation, by being less severe than 'extreme,' may allow some interpersonal contact"). Second, the statement in *Bingham* also referenced the "ability to adapt" area of mental functioning, and the ALJ here found Risch had only moderate limitations in that area. T. 24 (noting the ability to adapt or manage area of mental functioning "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting").

ratings are compatible with the RFC assigned to Risch.  *See Connor v. Colvin*, 2014 WL 3533466, at *4 (D. Me. July 16, 2014) (construing a rating of "not significant" for the category "People: 8 – Taking Instructions – Helping" as "consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors") (citations omitted); *Alie v. Berryhill*, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017) ("Level 8 interaction is compatible with a RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public."). Accordingly, the ALJ's failure to use the same exact language in the hypothetical and the RFC does not require remand.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (citations omitted).

### B.    The ALJ's RFC finding does not impermissibly contain vague and ambiguous terminology that is not expressed in terms of work-related functions.

Next, Risch argues the ALJ erred by formulating an RFC which contains vague, ambiguous terminology that is not expressed in terms of work-related functions.  Doc. 11 at 9-11; *see also* SSR 96-8p, 1996 WL 374184, at *1 (An RFC assessment must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.").  As previously indicated, the RFC provided that Risch could tolerate "occasional

superficial interaction with coworkers and supervisors, preferably in semi-isolation." T. 25. Risch takes issue with the ALJ's use of the words "superficial," "preferably," and "semi-isolation." However, after reviewing the ALJ's decision, the undersigned finds the ALJ's description of Risch's ability to interact with others is not impermissibly vague and he committed no error.

First, Risch asserts the term "superficial" is not defined by the DOT, the Selected Characteristics of Occupations, or the ALJ, and, thus, the VE must have testified based on a "blind assumption" about its meaning. However, neither the VE nor Risch's counsel expressed any doubt about its meaning at the hearing, and the VE testified a person restricted to occasional "superficial" interaction with coworkers and supervisors could work as a final assembler. *See Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (concluding VE's unrebutted testimony provided substantial evidence for ALJ's step-five finding when claimant "challenged neither the hypothetical question posed to the [VE] nor the expert's testimony that she could perform the jobs of parking lot cashier, hand packager, and bagger"); *Thomas v. Comm'r of Soc. Sec.*, 2020 WL 5810219, at *4 (M.D. Fla. Sept. 30, 2020) ("Courts in this circuit routinely reject the argument that the limitation is vague where … there is no indication that either the ALJ or the VE misunderstood its plain meaning.") (collecting cases).

Furthermore, courts have found the term "superficial" is a valid descriptor for the type of contact a claimant can tolerate. *See Hutton v. Comm'r of Soc. Sec.*, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (noting "'superficial interaction' is a well-recognized, work-related limitation"); *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions."). Thus, the ALJ's use of the term "superficial" does not constitute reversible error.

Next, Risch challenges the portion of the RFC which indicates Risch's occasional, superficial interaction with coworkers and supervisors should occur "preferably" in semi-isolation. Risch asserts the ALJ's use of the word "preferably" requires remand because: (1) it does not describe his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," in violation of SSR 96-8p; (2) it is unclear whether Risch can interact with others outside of a semi-isolated environment; and (3) it is unclear whether the VE "incorporated the ALJ's 'preference' that the interaction occur in 'semi-isolation'" into her assessment of whether the hypothetical individual could work as a final assembler.

Once again, the undersigned sees no reversible error. As with the use of the term "superficial," neither the VE nor Risch's counsel expressed any confusion about the ALJ's use of the word "preferably" or its impact on the availability of jobs. *See Teague*, 743 F. App'x at 412; *Thomas*, 2020 WL 5810219, at *4. And "[w]hile the inclusion of more precise … terms may have been helpful to the VE, … there is nothing in SSR 96-8p that requires the exacting definitions that Plaintiff seeks for an ALJ's decision to be supported by substantial evidence." *Tatrai v. Berryhill*, 2018 WL 4624858, at *3-4 (W.D. Okla. Sept. 10, 2018), *report and recommendation adopted*, 2018 WL 4624816 (W.D. Okla. Sept. 26, 2018) (rejecting argument that terms and phrases in the hypothetical to the VE such as "adequate," "most of the time," "variable," and "from time to time" were impermissibly vague because they "are common phrases with meaning readily understandable by a VE" and the VE did not "appear confused by the terminology used by the ALJ or seek clarification about the meaning of the terms used in the RFC"); *see also Miller v. Colvin*, 2013 WL 6407973, at *4 (N.D. Ala. Dec. 6, 2013) (noting "[t]he Eleventh Circuit has held that, even when the ALJ could have been 'more specific and explicit' in his findings with respect to a plaintiff's 'functional limitations and work-related abilities on a function-by-function basis,' they nonetheless meet the requirements under SSR 96-8p if the ALJ considered all of the evidence") (quoting *Freeman v. Barnhart*, 220 F.

App'x 957, 959 (11th Cir. 2007)). Thus, the ALJ's use of the word "preferably" does not constitute reversible error.

Risch's third vagueness challenge concerns the ALJ's use of the term "semi-isolation." Risch claims it is unclear whether "semi-isolation" refers to the amount of time he can interact with others, the number of people he can interact with at any given moment, or both. However, as explained above in Part III-A, within the decision, the ALJ indicated work in "semi-isolation" was consistent with work in small groups with only superficial and occasional contact, and the VE testified a person with such limitations could work as a final assembler. Thus, the ALJ used the term "semi-isolation" to refer to the setting in which Risch's interactions with coworkers and supervisors could take place (i.e., small groups), while he used the term "occasional" to describe the frequency of those interactions and the term "superficial" to describe the nature of those interactions.

In sum, Risch's vagueness challenge lacks legal and factual support. Risch has not identified any caselaw where a court concluded a similar RFC was overly vague. As explained above, the challenged terms have a sufficiently clear meaning. *See Little v. Colvin*, 2013 WL 3786617, at *9 (N.D. Fla. July 18, 2013) ("Even if the court somehow found these phrases vague, '[it] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (quoting *Dixon v. Astrue*, 312 F. App'x 226, 229 (11th Cir. 2009)). And the VE testified a person with

the limitations described in the RFC could work as a final assembler, which provides substantial evidence for the ALJ's step-five finding.  Accordingly, Risch has not demonstrated the ALJ's RFC finding was so vague that remand is required.

**C.    The ALJ's failure to include a limitation in the RFC regarding Risch's ability to interact with the public does not constitute reversible error.**

Next, Risch claims the ALJ erred by failing to include a limitation in the RFC regarding his ability to interact with the public, even though the evidence supports such a limitation and the ALJ found he had "marked" limitations in his ability to interact with others, which includes the public.  Doc. 11 at 11-12 (citing T. 24). Because the ALJ's hypothetical to the VE did not expressly include a public interaction limitation, Risch argues it is unclear whether he can work as a final assembler.

However, even assuming the ALJ erred by failing to explicitly include a public interaction limitation in the RFC or the hypotheticals to the VE, the error was harmless because the VE's testimony indicates the VE treated the hypotheticals as including such a limitation.  During the colloquy between the ALJ and the VE, the VE testified that if the initial hypothetical was amended to limit the use of the right upper extremity to no more than occasional pushing, pulling, reaching, fingering, and handling, there would be no jobs available.  T. 71.  The VE explained the types of jobs were already limited because "two out of three are working with the public,

and another one has very low numbers." T. 71. Thus, the only job available, after excluding those three jobs, at a sedentary, SVP 2 level that is not fast-paced, belt-driven type work is that of a final assembler. However, a final assembler would need to use his right upper extremity on a frequent rather than occasional basis. T. 71. The added limitation, therefore, would exclude all jobs.

Based on this exchange, it is clear the VE identified jobs in response to the first hypothetical which did not require the individual to work with the public. Accordingly, because the VE considered the final assembler job as not requiring such interaction—the ALJ's failure to include that limitation in the RFC is a harmless error which does not require reversal.[5] *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274 n.11 (11th Cir. 2024) ("Remand is unwarranted unless an error creates fundamental unfairness or prejudice.") (citation omitted); *see also Jones v. Comm'r of Soc. Sec.,* 492 F. App'x 70, 73 (11th Cir. 2012) (holding ALJ's failure to

---

[5] Decisions from other district courts also indicate the final assembler job can performed without public contact. *See Danijela P. v. Comm'r of Soc. Sec.*, 2023 WL 8374389, at *10-11 (E.D. Mich. Dec. 4, 2023) (describing testimony of VE which indicated a person who "should never have to interact with the general public" could work as a final assembler); *Callahan v. Berryhill*, 2017 WL 522823, at *2 (C.D. Cal. Feb. 8, 2017) (describing testimony of VE which indicated a person limited to "no public contact, and occasional contact with co-workers and supervisors" could work as a final assembler); *Sanchez v. Colvin*, 2016 WL 370687, at *3, 16 (C.D. Cal. Jan. 29, 2016) (describing testimony of VE which indicated "no working with [the] general public" could work as a final assembler); *Vining v. Astrue*, 720 F. Supp. 2d 126, 129, 135 (D. Me. 2010) (describing testimony of VE which indicated a person limited to "no interaction with the public" could work as a final assembler).

include a driving limitation in the hypothetical to VE was harmless because jobs identified by VE did not involve driving).

### D.   The ALJ adequately considered the effects of Risch's anxiety.

Lastly, Risch argues the ALJ erred by not finding his anxiety was a severe impairment[6] at step two, by failing to consider whether his anxiety met Listing 12.06, and by failing to consider his anxiety when making the RFC determination.  Doc. 11 at 23-35.

As an initial matter, the ALJ's failure to identify anxiety as a severe impairment does not, by itself, constitute reversible error because the ALJ concluded Risch had multiple severe impairments—including PTSD and depression—and proceeded through the rest of the five-step evaluation process.  Thus, the pertinent inquiry is whether the ALJ adequately considered the effects of Risch's anxiety when evaluating whether he met a Listing and determining his RFC.  *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two.  Accordingly, even assuming [the claimant] is correct that her additional impairments were 'severe,' the ALJ's

---

[6] An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").

recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly*, 382 F. App'x at 825 ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.") (citations omitted).

After reviewing the ALJ's decision and the record, the undersigned finds the ALJ did not err when considering whether Risch met a Listing or determining his RFC. Risch suggests he met Listing 12.06, which is titled "Anxiety and obsessive-compulsive disorders" and requires a claimant to meet the criteria in paragraphs A and B or A and C.[7] Paragraph B requires a claimant to have:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

Paragraph C contains the following requirements:

---

[7] Risch's memo includes a paragraph criticizing the ALJ's analysis of the listings related to musculoskeletal disorders. Doc. 11 at 27. The paragraph appears misplaced, as it: (1) contains a quote which is attributed to the ALJ but does not appear in the decision; (2) contains an incorrect citation to the ALJ's decision; (3) claims the ALJ failed to "address which specific musculoskeletal listing might be applicable here," Doc. 11 at 27, despite the ALJ's references to Listing 1.15 and 1.16, T. 24; and (4) asserts the ALJ failed to provide any discussion of the relevant criteria, despite the ALJ's discussion of why Listing 1.15 and 1.16 were not met.

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.06.

The ALJ did not specifically address whether Risch met Listing 12.06 in his decision, but he did consider Listings 12.04 and 12.15, which contain the same paragraph B and C criteria, and concluded Risch: (1) did not satisfy the paragraph B criteria because he did not have extreme limitations in any area of mental functioning and had marked limitations in only one area; and (2) did not satisfy the paragraph C criteria because he did not have marginal adjustment. T. 24. Because the ALJ found Risch did not satisfy the paragraph B and C criteria, the Court can infer the ALJ also found Risch did not meet Listing 12.06, and the ALJ's failure to specifically discuss Listing 12.06 in his decision does not constitute reversible error. *See Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 969 (11th Cir. 2014) ("The ALJ's finding as to whether a claimant does or does not meet a listed impairment may be implied from the record.") (citation omitted).

Risch also asserts his "anxiety should have been considered in the context of whether [his] anxiety met or equaled a listing, especially considering that there is no

discussion about equivalency where there is evidence of at least three co-morbid mental impairments."  Doc. 11 at 30.  But Risch does not identify which Listing (other than 12.06) he believes he met or equaled or explain how he satisfied the criteria to meet that listing.[8]  *See Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) ("The burden lies with the claimant to prove that he meets or equals a Listing.") (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).  Nor does he challenge the ALJ's finding that he did not satisfy the aforementioned paragraph B and C criteria, which are present in almost all of the Listings related to mental disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.02 – 12.15; *see also* 20 C.F.R. § 404.1525(d) (A claimant "cannot meet the criteria of a listing based only on a diagnosis" and must instead have an impairment "that satisfies all of the criteria in the listing."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").  Because Risch fails to explain how—or cite evidence showing—he meets the criteria of any Listing, he has not established the ALJ committed reversible error at step three of the evaluation process.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th

---

[8] Risch makes the conclusory assertion that his "mental impairments, individually and collectively, so closely satisfy the criteria for various mental listings that the ALJ should have at least called upon a Medical Expert considering the complex and significant co-morbid impairments."  Doc. 11 at 34.  However, he fails to identify which criteria he is referring to or explain how he "closely satisfied" those criteria.

Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.") (citation omitted).

Finally, Risch suggests the ALJ failed to consider the effects of his anxiety when assessing his RFC. However, the ALJ's decision shows he reviewed the evidence related to Risch's anxiety, including his testimony, a report from his wife, treatment records, the consultative examination report, and the opinions from the treating and non-treating sources. T. 25-30. And the ALJ thoroughly discussed that evidence and accounted for it by concluding Risch had significant limitations in his ability to interact with others. *See* T. 29 (explaining that Risch's social functioning is limited to a marked degree because he "has exhibited anxiety and sought treatment for difficulties relating to others," he "quit his last job due to the stress caused, in part, by interacting with others," and "social interaction can trigger stress-related decompensation"); T. 29-30 (discussing the consultative examiner's report, stating the ALJ was "persuaded only by the conclusion that [Risch] has social deficits/anxieties that are a stress trigger," and indicating "[i]t is why [Risch] is found to have marked limitations in social interacting"); T. 30 (agreeing with treating source's opinion that Risch has marked limitations in his social interactions and indicating "it has been accounted for with a limitation to semi-isolation work in small groups with only superficial and occasional contact"); T. 28 ("While his wife

reported significant problems with his ability to interact, stating he gets confused and upset extremely easily in social settings and [has] difficulty with stress, these allegations have been considered in finding [he] has marked social limitations and moderate limitations adapting and managing himself, and such limitations are reflected in this [RFC].").

Furthermore, Risch does not identify any limitations his anxiety caused that were not already accounted for in the RFC.  *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317-18 (11th Cir. 2021) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (alteration in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  In essence, Risch is asking the Court to reweigh the evidence and substitute its judgment regarding his functional limitations for that of the ALJ; but that is beyond the scope of the Court's review.  *See Heatly*, 382 F. App'x at 824 ("Under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the [ALJ].") (citation omitted).  Because the record shows the ALJ considered the evidence related to Risch's anxiety and assessed an RFC which accounted for that evidence, Risch has not demonstrated the ALJ committed reversible error by failing to identify anxiety as a severe impairment at step two.

## IV.    Conclusion

Accordingly, it is RECOMMENDED:

1.    That the decision of the Commissioner denying Risch's application for Disability Insurance Benefits be AFFIRMED.

2.    That the clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 14th day of February, 2024.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.